UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LEONARD P. WLODARCZYK,

                Plaintiff,

                                    **Hon. Hugh B. Scott**

          v.                                **15CV456A**

                                              **Report
and
Recommendation**

NANCY A. BERRYHILL[1], Acting
Commissioner of Social Security,

                Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 28 (plaintiff), 29 (defendant Commissioner)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled for the entirety of the period claimed for disability insurance benefits and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security, became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Ms. Berryhill is substituted for now former Acting Commissioner Carolyn W. Colvin as Defendant in this action; no further action is required, 42 U.S.C. § 405(g).

## PROCEDURAL BACKGROUND[2]

The plaintiff ("Leonard Wlodarczyk" or "plaintiff") filed an application for disability insurance benefits on November 19, 2002, and for Supplemental Security Income benefits on December 5, 2008 (R. 601). Those applications were denied initially and on reconsideration. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated August 14, 2006, that the plaintiff was not disabled within the meaning of the Social Security Act (R. 18).

As previously noted in this case (Docket Nos. 13, Order of Oct. 6, 2015, 16, Report & Recommendation of Oct. 28, 2015), a series of administrative proceedings (including one instance of judicial review) occurred, most centered on the timeliness of plaintiff's seeking administrative and judicial review (e.g., Docket No. 16, Report at 2-3; Docket No. 13, Order at 2-6, 7). Plaintiff appealed to the Appeals Council which, on September 5, 2008, declined review (R. 5). He initially sought judicial review, Wlodarczyk v. Astrue, No. 08CV785, and this Court reversed and remanded to the Commissioner, id., Docket No. 11 (Skretny, C.J.) (Order of Mar. 11, 2010) (R. 608).

On remand from this Court, on April 26, 2010, the Appeals Council then remanded this matter to the ALJ (R. 605-06; Docket No. 1, Compl. ¶ 9; Docket No. 13, Order at 2). A second hearing was held (R. 1438) and, on February 23, 2011, the ALJ considered the opinions of Drs. Robert Gianfagna and Albert Schlisserman, and found partially in favor of plaintiff (R. 587, 592). The ALJ denied plaintiff disability benefits but granted his motion for Supplemental Security Income benefits as of September 15, 2010 (R. 592, 599-600, 601-02, Docket No. 13,

---

[2]References noted as "(R.__)" are to the certified record of the administrative proceedings, filed with this Court in paper form on September 22, 2016.

Order at 2), when plaintiff began to have chest pains and eventually had bypass surgery (R. 599). On April 19, 2011, plaintiff filed his exceptions to the ALJ's decision (Docket No. 16, Report & Rec. at 2; Docket No. 13, Order at 4; Docket No. 9, Pl. Atty. Decl. ¶ 8, Ex. A). There was inaction within the Social Security Administration while plaintiff believed these exceptions were pending (Docket No. 13, Order at 4-5). On March 24, 2015, the Appeals Council found that plaintiff did not file timely exceptions to the ALJ's decision (R. 652; Docket No. 16, Report & Rec. at 2). On May 26, 2015, the Appeals Council set aside its March 24, 2015, decision and found that plaintiff was untimely in filing his exceptions (R. 653; Docket No. 16, Report & Rec. at 2-3), thus making the ALJ's decision the final decision of the Commissioner as of that date. In considering defendant's initial motion (Docket No. 4) to dismiss on timeliness grounds, this Court found that the date of final decision was May 26, 2015, and that plaintiff's present Complaint was timely (Docket No. 16, Report & Rec. at 10). Defendant filed her objection (Docket No. 17) and Judge Richard Arcara adopted the Report & Recommendation (Docket No. 22, Order of July 28, 2016), finding that this action was commenced a few days before the May 26, 2015, final decision, thus the action was deemed timely (id. at 2).

Plaintiff commenced this action on May 22, 2015 (Docket No. 1). After defendant moved to dismiss on timeliness grounds (Docket No. 4; see Docket No. 16, Report & Rec., Docket No. 22, Order adopting Report), the parties moved for judgment on the pleadings (Docket Nos. 28, 29). After timely responses (Docket No. 29) and reply (Docket No. 30), the motions were deemed submitted on February 21, 2017 (Docket No. 27) following extensions of the briefing schedule (Docket Nos. 23, 25 (scheduling Order), 24, 26 (motions for extension)).

## FACTUAL BACKGROUND

Plaintiff was born on January 28, 1965, and has a high school education (R. 71, 1443; Docket No. 28, Pl. Memo. at 2). The ALJ found that plaintiff was a "younger individual age 18-49" (R. 600, 25). Plaintiff worked as a construction lead worker from June 1989 to June 2001 (Docket No. 28, Pl. Memo. at 2; R. 109; see R. 600 (plaintiff had semi-skilled work background)). The ALJ found that as of November 27, 2001, plaintiff was unable to perform his past relevant work (R. 600).

Plaintiff's impairments are status post stroke in 1998 with bilateral loss of left visual field, myocardial infarction on Feb. 1, 2002, and acute myocardial infarction on September 15, 2010, with subsequent bypass surgery (R. 594-95). Plaintiff also claims depression, but that condition was not deemed to be severe by the ALJ (since he was being treated with medication prescribed by a general practitioner without need for a psychiatrist) (R. 595). The ALJ found that plaintiff had no limitations due to his diabetes or the use of his hands (R. 594-95). The ALJ deemed plaintiff disabled as of September 15, 2010, after plaintiff's bypass surgery (R. 593, 595, 594). He alleged an onset of the disability beginning January 25, 2002 (R. 592).

## MEDICAL AND VOCATIONAL EVIDENCE

On February 22, 1998, plaintiff suffered a stroke resulting in left homonymous hemianopia (R. 281-82), which is blindness of the nasal half of the visual field of one eye and temporal half of the other, Taber's Cyclopedic Medical Dictionary, at 801 (16th illustrated ed. 1989). After the stroke, plaintiff claims that that he was unable to operate equipment or drive company vehicles because of his visual loss, requiring that he only work on the ground level (R. 540; Docket No. 28,

Pl. Memo. at 3). Plaintiff complained of severe chest pains in 2010 and had bypass surgery on September 15, 2010 (R. 596).

Plaintiff testified that he had no left hemispheral vision in either eye due to the 1998 stroke (R. 544, 1475-76; Docket No. 28, Pl. Memo. at 15). He complains of floaters when in a room with fluorescent lighting, with doctors advising that he stay out of fluorescent lighting (R. 544-46, 1485; Docket No. 28, Pl. Memo. at 15). He also noted that normal eye fatigue not in fluorescent lighting would cause floaters with burning sensation (R. 547). He testified to having blurred vision from no apparent cause (R. 1484). He claimed that he could only read up to fifteen minutes before getting eye strain and headaches that required rest (R. 545, 1485). For prolonged reading, he would read for fifteen minutes, rest for twenty, and then resume reading, but if he did this for more than two hours, he would need to lie down for twenty minutes to an hour due to the severity of headaches (R. 545; Docket No. 28, Pl. Memo. at 15). He does everything at a slower pace due to his lack of depth perception (R. 1477; Docket No. 28, Pl. Memo. at 15), such as difficulty when reaching for door handles and climbing (R. 546, 1476), or seeing at dusk or at night or in inclement weather (R. 547-48; Docket No. 28, Pl. Memo. at 15-16).

Since the stroke, plaintiff could sit for 45 minutes to an hour and a half before needing to lie down (R. 563-64; Docket No. 28, Pl. Memo. at 16). He could stand for up to an hour and, if alternating between sitting and standing, he could sit for a couple of hours before needing to lay down (R. 564-65). Pain affects performing daily chores because he would have to stop and start, taking frequent rests (R. 845; Docket No. 28, Pl. Memo. at 16).

The ALJ declined to give Dr. Gianfagna's opinion as much weight as the opinion of treating physician Dr. Les Zakrewski (R. 598; see Docket No. 28, Pl. Memo. at 3). Dr. Gianfagna

found that plaintiff was limited to standing and sitting for less than two hours a day; sit less than six hours per day; and could perform a low level of non-manual jobs in limited capacity (R. 379, 598). The ALJ, however, found that this finding was inconsistent with the medical record and Dr. Gianfagna's treatment notes of "only exertional angina" (R. 598). The ALJ did not give Dr. Gianfagna's opinion as much weight as is given to Dr. Zakrewski's opinion because Dr. Gianfanga failed to support his opinion when requested (R. 598, 866-67).

    Dr. Zakrewski reported, in January 21, 2003, that plaintiff was able to use public transportation (R. 597, 257, 252A), that plaintiff complained of profound fatigue and chest pains with moderate exercise but showed good exercise tolerance (12 METS) (R. 597). Plaintiff stated that he felt chest tightness with anxiety and exertion (for example, snow shoveling) (R. 597). Dr. Zakrewski found that plaintiff had "no limitations sitting, standing and walking; and should avoid lifting greater than 25 pounds or heavy pushing and pulling except for on an occasional basis" (R. 392, 598).

    Dr. Gianfagna, however, noted in May 2002 that plaintiff achieved 12 METS without chest pain (R. 597, 353). The doctor reported on December 26, 2002, that plaintiff had chest pains but he could stand and/or walk for less than two hours and sit less than six hours a day (R. 379). In February 2004, Dr. Gianfagna examined plaintiff and reported that plaintiff claimed episodes of angina, especially with heavy activity (such as chopping ice) (R. 421). On January 1, 2005, Dr. Gianfagna reported a follow up examination he did in December 2004 and plaintiff reported improvement of his angina (R. 597, 422) and then had no change when examined on April 4, 2006 (R. 597, 424). The ALJ later asked the relevancy of stress test results but Dr. Gianfagna failed to respond (R. 598).

Plaintiff's ophthalmologist, Dr. Schlisserman, treated plaintiff for left homonymous hemianopsia (R. 283-84; Docket No. 28, Pl. Memo. at 20).  Plaintiff complained of blurry vision that cleared with blinking, occasional burning, foreign body sensation, sensitivity to light, tiredness, floaters in the eyes, frequent headaches, and difficulty driving at night and reading from his 1998 stroke (R. 283-84, 599; Docket No. 28, Pl. Memo. at 20).  On June 21, 2002, Dr. Schlisserman indicated that plaintiff's vision remained unchanged since the stroke and he had blurred vision and blindness off and on (R. 599, 417-18).  The ALJ gave great weight to Dr. Schlisserman's findings and assessment (R. 599).  Dr. Schlisserman reported that plaintiff denied sensitivity to light and having floaters or having difficulty driving and reading (R. 599, 417), with plaintiff denying that he had difficulty reading (R. 599, 400, 417), although Dr. Schlisserman found that plaintiff's vision was not good enough for plaintiff to drive, operate machinery, or climb heights, and reading would "present[] some difficulty" (R. 400).

The ALJ determined that plaintiff's residual functional capacity prior to September 15, 2010, was that plaintiff could lift and carry 20 pounds occasionally, 10 pounds frequently; plaintiff was able to sit for 8-hour day with only normal breaks, stand and/or walk for 8-hour workday with normal breaks (R. 595).  Due to loss of left peripheral vision, the ALJ concluded that plaintiff could not perform jobs requiring use of motorized vehicles or where loss of visual field would be a danger to self or others in areas like load docks or construction sites.  (R. 595-96.)  The ALJ found that as of September 15, 2010, plaintiff became disabled and had a residual functional capacity to occasionally lift/carry less than 10 pounds; stand and/or walk for less than two hours a workday; sit less than six hours of a workday (R. 599).  Since plaintiff was unable to perform his past relevant work (R. 600), the ALJ also found that there were no jobs in national economy that

7

plaintiff could now perform (even at sedentary level) (R. 601).   The ALJ found that plaintiff was disabled for Supplemental Security Income coverage as of September 15, 2010 (R. 601).

Prior to September 15, 2010, the ALJ found that plaintiff could perform the full range of sedentary (as opposed to light) work (R. 599, 600-01).   The ALJ noted that "due to his loss of left peripheral visual field, he would not be suitable for jobs that require the operation of motorized vehicles or where the loss of visual field would be a danger to himself and others in areas like loading docks or construction sites where vehicles and cranes come from multi-directions"; despite these limitations, finding that plaintiff could perform sedentary work (R. 600-01).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability from November 19, 2002, to September 15, 2010 (R. 601), is supported by substantial evidence, see 42 U.S.C. § 405(g);   Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).   Substantial evidence is defined as "'more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir.

1992).   However, it should be noted that the ALJ has an affirmative duty to fully develop the record.   <u>Gold v. Secretary</u>, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past.   20 C.F.R. §§ 404.1520(e) & 416.920(e).   When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work."   <u>See</u> Social Security Ruling 82-62 (1982); <u>Washington v. Shalala</u>, 37 F.3d 1437, 1442 (10th Cir. 1994).   The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity.   <u>Washington</u>, <u>supra</u>, 37 F.3d at 1442.

*Application*

In the instant case, plaintiff claims that he was disabled from December 31, 2006, to September 15, 2010, and disabled from September 2010 because he cannot perform even sedentary work.   He contends that the ALJ erred in rejecting the opinion of Dr. Gianfagna and Dr. Schlisserman as to his heart and vision, respectively, as well as rejecting the opinion of consultative ophthalmologist Dr. Theodore Prawak (Docket No. 28, Pl. Memo. at 20-23).   Next, he faults the ALJ for finding that plaintiff was not credible in assessing his symptoms and their limitations on his life (<u>id.</u> at 23-25).   Plaintiff argues that, when considered in combination, his

10

impairments show that he was disabled (id. at 25-28). Finally, plaintiff asserts that he cannot perform sedentary work, contrary to the finding of the ALJ (id. at 28-30; cf. R. 595-99).

Defendant responds that the ALJ properly weighed the medical opinion evidence (Docket No. 29, Def. Memo. at 19-24). The ALJ properly considered, and then rejected, the findings of Dr. Gianfagna in favor of the contrary opinions of Drs. Zakrewski, Cindrea Bender (the consultative examiner), and state agency medical consultant Dr. H. Finley (R. 1031, 598; Docket No. 29, Def. Memo. at 20). Defendant points out Dr. Gianfagna was asked to clarify his opinion but failed to do so (R. 598; Docket No. 29, Def. Memo. at 22). Defendant notes that the ALJ did not discredit Dr. Schlisserman but found that the doctor's findings did not support a totally work-preclusive functional limitation (Docket No. 29, Def. Memo. at 23; R. 599). Next, defendant contends that the ALJ properly weighed plaintiff's credibility and considered his purported impairments collectively (Docket No. 29, Def. Memo. at 24-27, 28). Defendant concludes that plaintiff's medical opinion evidence and the medical record support the ALJ's finding that plaintiff was able to perform sedentary work (Docket No. 29, Def. Memo. at 28), with substantial evidence in the record to support that work level determination (id. at 28-30).

I.  Medical Source Opinions

   A.  Plaintiff's Heart Condition

Plaintiff argues that the ALJ fails to explain what "12 METS" means (Docket No. 28, Pl. Memo. at 22; R. 597). Defendant states that Dr. Zakrewski defined "12 METS" to mean 12 Metabolic Equivalents ("METS"), that is good exercise tolerance, indicating that the claimant could work full time (R. 252A, 256; Docket No. 29, Def. Memo. at 20).

Plaintiff contends that the treating physician's opinion, here Dr. Gianfagna's, should be given controlling weight (Docket No. 28, Pl. Memo. at 20).  This doctor treated plaintiff since February 2002 and noted his symptoms include daily chest pain and pressure and concluded that plaintiff can stand and/or walk only for up to two hours and sit for less than six hours a workday (id.).   Dr. Gianfagna noted that plaintiff could perform low-level non-manual jobs in a limited capacity (R. 379; Docket No. 28, Pl. Memo. at 20).

The ALJ did not give Dr. Gianfagna's findings as much weight as given for the other doctors' findings because Dr. Gianfagna failed to support his opinion when requested for additional materials by the ALJ (R. 598).   The doctor found that plaintiff did not exhibit exertional angina outside of exertion of shoveling snow but did not support those findings with objective or clinical evidence (R. 598).

Plaintiff argues that the ALJ could have subpoenaed information from Dr. Gianfagna (Docket No. 28, Pl. Memo. at 22), but defendant responds that the ALJ was not obliged to do what he did in contacting the doctor after remand and that plaintiff submitted additional information from Dr. Gianfagna but without addressing the doctor's omission (Docket No. 29, Def. Memo. at 22-23).

The ALJ focused on Dr. Gianfagna's December 23, 2002, findings to address the concerns this Court expressed in remanding this case (R. 866; see R. 613-14 (Wlodarczyk v. Astrue, No. 08CV785, Order of Mar. 10, 2010, at 6-7)).   But the doctor did not respond.   The record from around 2002-03 has both Drs. Gianfagna and Zakrzewski measuring plaintiff's stress tests having 12 METS but coming to inconsistent conclusions about his ability to perform activities.   In 2002, Dr. Gianfagna found that plaintiff had chest pains, especially with heavy activity, while

Dr. Zakrewski in 2003 found that plaintiff had chest pains with moderate exercise and especially after exertion with snow shoveling.

Plaintiff cites no authority that obliged the ALJ to go beyond what was done to obtain answers from the doctor.  As noted by the Second Circuit, "because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record," Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); see 20 C.F.R. § 404.1512(d) (the ALJ to develop a claimant's complete medical history and "make every reasonable effort to help you get medical reports from your own medical sources," emphasis added).  The ALJ wrote to the doctor who did not respond.  Plaintiff supplemented the record but did not add to the record to clarify Dr. Gianfagna's findings.  Thus, the ALJ made reasonable effort to obtain the gap in the record; absent receipt, the ALJ was left with the record before him and his conclusion that plaintiff was able to work despite the finding of exertion levels of Dr. Gianfagna.

Plaintiff's condition following December 2002 showed that his angina improved from only arising when he engaged in heavy activities to stabilizing by 2006.  The issue here is whether plaintiff was disabled by his heart condition prior to September 2010.  Plaintiff's treating physicians came to different conclusions about his abilities given his heart condition.  Absent answers to the ALJ's questions from Dr. Gianfagna, the record supports the ALJ's finding that plaintiff **was not disabled** by his heart condition until September 17, 2010, following heart surgery.

B.      Plaintiff's Vision

Plaintiff next contends that the ALJ dismissed the opinion of Dr. Schlisserman (Docket No. 28, Pl. Memo. at 20-21; see Docket No. 30, Pl. Reply Memo. at 2-3). The ALJ, however, gave "great weight" to Dr. Schlisserman's findings and assessment, that he had no change in his vision in 2002 since the 1998 stroke, that plaintiff still had blurred vision and blindness on and off (R. 599, 418). Plaintiff had denied vision loss to Dr. Schlisserman and other examining medical personnel (R. 599, 417); with plaintiff testifying that his vision was merely blurred and that he made accommodations for him to read (R. 599, 545). Plaintiff points to the findings of Dr. Schlisserman, but that doctor noted on April 28, 2004, that plaintiff called and canceled a follow up appointment stating that his eye condition had improved and that he felt "back to normal" (R. 416).

The ALJ's residual functional capacity analysis for plaintiff's vision factored in his lack of peripheral vision to exclude occupations requiring the operation of motor vehicles, machinery, or climbing heights (R. 595-96). Plaintiff cites to the ALJ's 2006 opinion (R. 26) that concluded that plaintiff could nevertheless perform the full range of sedentary work (Docket No. 28, Pl. Memo. at 22). But the ALJ's remand decision of February 23, 2011, concluded that plaintiff, prior to September 15, 2010, could perform a full range of light work but with his additional limitations affecting the full range of that work (R. 600-01), but again concluding that plaintiff could perform a full range of sedentary work (R. 601). The distinction between light and sedentary work (as discussed in more detail below) does not factor in specifically the visual capabilities of the claimant.

The vision impairment was rejected by the ALJ based upon his assessment of plaintiff's credibility (R. 598), which is considered below.

II.     Plaintiff's Credibility

The ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible as to his condition prior to September 2010 as these statements were not consistent with plaintiff's residual functional capacity assessment (R. 597). Plaintiff counters that this finding was not supported by substantial evidence (Docket No. 28, Pl. Memo. at 23). The ALJ also found that plaintiff's complaints about his vision were not credible (R. 598), with the ALJ noting that plaintiff read, watched television, and used the computer daily, while taking breaks to rest his eyes (R. 598). Plaintiff returned to construction work in 1999 but did not operate heavy equipment (R. 598). Plaintiff continued to drive until about 2008 ("three years ago" from the 2011 decision date, R. 598) but never surrendered his driver's license or had it taken away (R. 598). The ALJ noted that the medical record showed plaintiff had permanent loss of left visual field in both eyes (R. 599). An examination by University Eye Specialists in 2009 noted that plaintiff had no limitation in his vision (R. 1023, 1026-30, 599).

While plaintiff points to his several ailments in the record (Docket No. 28, Pl. Memo. at 23-25, 2-14), there are instances, for example his vision, where plaintiff minimized his condition to medical professionals; for example, he declined a follow up appointment with Dr. Schlisserman in 2004 claiming that he felt "back to normal" (R. 416).

Under the substantial evidence standard considered here, the ALJ's findings of fact must be upheld unless "a reasonable factfinder would have to conclude otherwise," Brault v. Soc. Sec.

Admin., 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (Docket No. 29, Def. Memo. at 15), and this Court has to defer to the ALJ's credibility assessment of plaintiff and other witnesses before him which is the product of the ALJ's discretion, see Krull v. Colvin, No. 15-4016, 2016 U.S. App. LEXIS 17512, at *5 (2d Cir. Sept. 27, 2016) (Summary Order).  The record here provides substantial evidence to support the ALJ's credibility determination.  Whatever vision problems plaintiff had, he minimized them to medical personnel and did not take steps to ameliorate his conditions (such as obtain and use sunglasses for the glare of fluorescent lighting). Plaintiff testified that he read, watched television, and used the computer, with breaks in reading every fifteen minutes.  The ALJ could properly discount these breaks given plaintiff also drove (R. 598-99).  Finally, the residual functional capacity incorporated restrictions due to plaintiff's limitations on his vision (R. 599).  Plaintiff has not shown that a reasonable factfinder would find to the contrary.  On this ground, plaintiff's motion for summary judgment (Docket No. 28) should be **denied**.

III.    Sedentary Work

Plaintiff argues that his limitations preclude sedentary work, concluding that the ALJ erred in finding that he was capable of performing a full range of sedentary work (Docket No. 28, Pl. Memo. at 22; R. 26).  But plaintiff cites to the initial ALJ decision of August 14, 2006 (R. 18), which later was vacated (R. 608, 614-15).  The present ALJ decision found limitations on plaintiff's ability to work (R. 599), based upon the 2010 stroke that reduced his capacity to less than sedentary as of September 15, 2010, for one at least year (R. 600).  Prior to September 15, 2010, the ALJ found that plaintiff could perform a limited light work sufficient to the full range of sedentary work (R. 600-01).

Plaintiff first argues that the Medical-Vocational Guidelines are not applicable if the claimant suffered from a nonexertional impairment which diminished his ability to perform a full range of work (Docket No. 28, Pl. Memo. at 28), Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986). Plaintiff contends that the ALJ erred in finding that his extensive list of impairments had no effect on the full range of sedentary work without support in the record and the ALJ did not make a full and detailed finding of fact to justify sedentary work despite plaintiff's nonexertional impairments (id. at 29), Jerome v. Astrue, No. 2:08-CV-98, 2009 U.S. Dist. LEXIS 104374 (D. Vt. Nov. 6, 2009) (quoting Munks v. Heckler, 580 F. Supp. 871, 874-75 (N.D. Ill. 1984); emphasis in original removed). Defendant responds that plaintiff had the burden, which he did not meet, to establish those nonexertional limitations (Docket No. 29, Def. Memo. at 29-30).

Light work is defined, among other characteristics, as a claimant's ability to lift 20 pounds occasionally and 10 pounds or more frequently and requires a good deal of walking or standing , e.g., 20 C.F.R. § 404.1567(b). Sedentary work, however, is defined by the claimant's ability lift no more than 10 pounds, which involves sitting, "a certain amount of walking and standing is often necessary," with walking and standing "are required occasionally," e.g., 20 C.F.R. § 404.1567(a)). The ALJ distinguished light work from sedentary work, where plaintiff's limitations would preclude light work but somehow not preclude sedentary work. Despite defendant's argument (cf. Docket No. 29, Def. Memo. at 29-30, arguing plaintiff had the burden to establish limitations), the ALJ found some limitations to reduce plaintiff's ability to perform even light work. The ALJ, however, did not make specific findings why the nonexertional limitations that preclude light work somehow allowed plaintiff to perform sedentary work. Here, the ALJ found limitations that would preclude plaintiff from finding any light work but allow him to perform less strenuous

sedentary work but without arguing how plaintiff has the ability to perform the latter but not the former.   While plaintiff (as discussed above) has not shown limitations that sufficiently impair him, the ALJ found that he was sufficiently limited to preclude light work but not (for unstated reasons) sedentary work.   It is this omission in the findings of how plaintiff can nevertheless perform sedentary work that warrants remand.

Therefore, plaintiff's motion for summary judgment should be **granted** on the limited basis of the ALJ's conclusions regarding plaintiff's ability to perform sedentary work.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **vacated** and this matter be **REMANDED** for further administrative proceedings (in particular the finding on sedentary work).   Defendant's motion for judgment on the pleadings (Docket No. 29) should be **DENIED** and plaintiff's motion for summary judgment in his favor (Docket No. 28) should be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within fourteen (14) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72(b).  <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent</u>**

**district court's order adopting the recommendations contained herein.**  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
June 19, 2017